UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14087-BLOOM

**JEREMY N. KLECKNER**,

    Petitioner,

v.

**FLORIDA DEPARTMENT OF CORRECTIONS**,

    Respondent.

_____/

ORDER ON AMENDED PETITION
FOR WRIT OF *HABEAS CORPUS*

**THIS CAUSE** comes before the Court on Petitioner Jeremy N. Kleckner's *pro se* Amended Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody, ECF No. [12] ("Petition"). Petitioner challenges the constitutionality of his state convictions and sentences on charges of first-degree arson and possession of a firebomb in case number 56-2015-CF-21A in the Nineteenth Judicial Circuit for St. Lucie County, Florida. *See generally id.*

Respondent filed a Response, ECF No. [14], an Appendix, ECF No. [15], with attached exhibits, ECF Nos. [15-1] – [15-4], and a Notice of Filing Transcripts, ECF No. [16], with the attached trial and sentencing transcripts, ECF No. [16-1]. Petitioner thereafter filed a Reply, ECF No. [19]. The Court has carefully considered the Petition, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is dismissed in part and denied in part.

**I.    BACKGROUND**

Following a jury trial, Petitioner was convicted of one Count of Arson of a Dwelling and

one Count of Possession of a Firebomb. *See* ECF No. [15-1] at 13.[1] Petitioner was sentenced to twenty-five years prison on the arson Count and to a concurrent term of five years prison on the firebomb count. *See id.* at 18–22.

### A. Evidence Presented at Trial

A total of fifteen (15) witnesses testified for the State over the course of a four-day trial. *See generally* ECF No. [16-1]. The State's first witness was a victim who testified that she dated Petitioner for about a month before ending the relationship. *See id*. at 49–50. The victim testified that Petitioner did not want to end the relationship. *See id*. at 50. On the incident day, in Port St. Lucie, the victim awoke to her son screaming and fire alarms going off. *See id*. at 65. She ran to her son's room and saw that his bed was on fire. *See id*.

The victim's son testified that he was in his bed sleeping when the firebomb was thrown through his window. *See id*. at 134. The victim's son stated he was cut by the glass and had a scar on his arm. *See id*. at 135. The firebomb landed on the victim's son's bed and caused the bed to be set on fire. *See id*. His mother was able to extinguish the fire. *See id*. at 136. The victim's son also testified that his mother had dated Petitioner and, after she broke up with the Petitioner, Petitioner asked the victim's son to try to get his mom to take Petitioner back. *See id*. at 137.

Petitioner testified on his own behalf at trial. He admitted to buying the same type of jar used in the firebombing a few hours before the firebombing took place. *See id*. at 697–98. He also admitted to purchasing a rag that was the same size, shape, color, and appearance to the one used in the firebombing. *See id*. at 698–99. Petitioner further admitted to lying to officers about being in Port St. Lucie at the time of the incident. *See id*. at 699.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of court filings.

### B. Remaining Procedural History

Petitioner raised five grounds in his direct appeal: (1) the trial court erred when it allowed the State to introduce Petitioner's mid-trial jail calls; (2) there was fundamental error as a result of prosecutorial misconduct during closing arguments and cross-examination; (3) counsel provided ineffective assistance; (4) the evidence did not support the conviction for possession of a firebomb; and (5) the trial court erred by considering improper sentencing considerations. *See* ECF No. [15-1] at 78–147. The Fourth District Court of Appeal issued a *per curiam* affirmance on March 21, 2019. *See id.* at 223.

In the state court proceedings, Petitioner filed a Motion for Postconviction Relief on January 13, 2020. *See id.* at 237–76. He raised six grounds: (1) counsel was ineffective for failing to object when the prosecutor asked irrelevant and prejudicial questions during cross-examination of Petitioner; (2) counsel was ineffective for abandoning his strategy mid-trial due to a possible violation of the rule of sequestration and failed to present evidence to corroborate Petitioner's testimony; (3) counsel was ineffective for failing to object and ask for a mistrial due to prosecutorial misconduct during closing arguments; (4) counsel was ineffective for failing to move to redact portions of Petitioner's statement to detectives; (5) counsel was ineffective for failing to investigate and call witnesses to aid in his defense; and (6) the evidence did not support the conviction for possession of a firebomb. *See id.* The State responded, *see id.* at 278–300, ECF No. [15-2] at 1–28, and the trial court denied the motion, in part adopting the response of the State. *See* ECF No. [15-4] at 67–74. Petitioner appealed, and the Fourth District Court of Appeal *per curiam* affirmed the denial of the postconviction motion on December 9, 2021. *See id.* at 121.

The instant Petition was filed on April 28, 2022. *See* ECF No. [12] at 16.[2] The Petition

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

raises two claims, each with several sub-claims. In Ground One, Petitioner alleges the trial court erred by admitting his mid-trial jail calls, there was not sufficient evidence to support the conviction for possession of a firebomb, the trial court made errors during his sentencing, and he received ineffective assistance of counsel "on [the] record's face."[3] *Id*. at 5. In Ground Two, Petitioner asserts his counsel was ineffective for failing to properly object to prosecutorial misconduct, abandoning a defense strategy mid-trial and failing to call defense witnesses, failing to move to redact evidence, and failing to properly argue against the firebomb charge. *See id.* at 7.

## II.     LEGAL STANDARD

### A.     Deference Under § 2254

A court's review of a state prisoner's federal *habeas corpus* petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014).

According to AEDPA, a federal court may not grant a *habeas* petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or

---

[3] Petitioner fails to provide any facts supporting his claim of ineffective assistance in Ground One. However, liberally construed, it appears Petitioner is referencing his ineffective assistance subclaim in Point II of his initial brief on direct appeal. *See* ECF No. [15-1] at 115 n. 3 ("This Court should also reverse because Kleckner was prejudiced by his counsel's ineffective assistance in failing to object to these numerous blatant instances of prosecutorial misconduct. Doing so would have either stopped the prosecutor's misconduct or at the very least preserved the issues for appellate review. The issue of ineffective assistance on the face of the record is discussed further in Point III."). Point III of Petitioner's initial brief argues that defense counsel rendered ineffective assistance. *See id*. at 133 (arguing that while ineffective assistance claims may not be brought on direct appeal, "[a] rare exception exists when the ineffectiveness is obvious on the face of the record."). Accordingly, the Court will address Petitioner's claim of ineffective assistance of counsel in Ground One as a claim of cumulative ineffective assistance and will address the claim with Petitioner's other ineffective assistance claims in Ground Two.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Id.* at 410. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an

5

adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . , and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010). Deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

### B.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687–88; *see also Harrington*, 562 U.S. at 104.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

### III. DISCUSSION

The Court proceeds to consider whether the Petition was timely filed, whether Petitioner exhausted his state court remedies, the merits of Petitioner's claim of "I.A.C. on record's face" in Ground One and Ground Two, whether an evidentiary hearing is warranted, and whether Petitioner is entitled to a Certificate of Appealability.

### A. Timeliness

Respondent concedes, and the Court confirms, that the Petition was timely filed. *See* ECF No. [14] at 6.

### B. Exhaustion/Procedural Default

A petition for writ of *habeas corpus* cannot be granted unless the petitioner first exhausted his state court remedies. *See* 28 U.S.C. § 2254(b), (c). The petitioner must first give the state court the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (cleaned up). To exhaust state remedies:

> [A] habeas claim must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling a petitioner to relief. A petitioner does not satisfy the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief. Nor is it enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."

*Gray v. Netherland*, 518 U.S. 152, 163 (1996) (cleaned up). "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). Where a petitioner's claim under 28 U.S.C. § 2254 was not properly exhausted and there is no longer a remedy available in state court because the unexhausted claims are no longer capable of exhaustion at the state level, the claims are procedurally defaulted. *See Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Respondent asserts that Petitioner is procedurally barred from asserting his claims in Ground One[4] because "he did not fairly present the federal nature of these claims to the state court

---

[4] In Ground One, Petitioner asserts that the trial court erred in admitting his jail calls, there was insufficient evidence to support his conviction, and errors were made during sentencing. As explained, the Court will address all ineffective assistance claims together in Ground Two.

. . . . None of these issues were raised as violations of federal law, no federal sources were cited to support his claims, and there was no other indication that there was a federal basis to his argument." ECF No. [14] at 8. The Court agrees.

In his initial brief on direct appeal, Petitioner cited to Florida statutes, the Florida Rules of Criminal Procedure, and a treatise on Florida evidence. *See* ECF No. [15-1] at 84–85. He additionally cited 82 Florida state cases decided on Florida state law grounds. *See id.* at 81–84. However, critically missing from the brief is any mention of federal rights or the federal constitution — not even to broad provisions like due process or equal protection. The is no mention of the word "federal" in the entire 60-page brief. "A litigant can easily indicate his claim's federal law basis in a petition or brief, for example, by citing to the federal source of law on which he relies or simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 28. There is nothing in Petitioner's argument that would have alerted the state court to the presence of a federal claim. Thus, Petitioner failed to exhaust his federal claim.

Moreover, Petitioner is now be barred from raising his federal constitutional claim before the state court. Florida law procedurally bars new claims or claims that have already been raised in prior petitions when "the circumstances upon which they are based were known or should have been known at the time the prior petition was filed." *Johnson v. Singletary,* 647 So. 2d 106, 109 (Fla. 1994).

To overcome this procedural bar in federal court, there are two equitable exceptions to the procedural default rule: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004). To demonstrate "cause and prejudice," Petitioner must show that "some objective factor external to the defense impeded the effort to raise the claim properly in the state court[,]" and that, had the claim been properly raised, "there is at least a reasonable probability that the

9

result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).

In contrast, the actual innocence exception can only be met when the petitioner provides new evidence showing that "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Petitioner bears the burden of proving that either one of these exceptions would excuse a procedural default. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]") (cleaned up).

Neither equitable exception to the procedural default rule applies. Petitioner makes no showing of "cause and prejudice," and no new evidence is presented to establish "actual innocence." *See generally* ECF Nos. [12], [19]. Ground One is thus dismissed as procedurally defaulted. *See Bailey*, 172 F.3d at 1302.

**C.     The Merits**

The Court proceeds to the merits of Ground Two and the claim of "I.A.C. on record's face" in Ground One. Petitioner asserts in Ground Two that his trial counsel was ineffective for failing to properly object to prosecutorial misconduct, abandoning the defense strategy mid-trial and failing to call defense witnesses, failing to move to redact evidence, and failing to properly argue against the firebomb charge. *See* ECF No. [7] at 7. The Court liberally construes Petitioner's claim of "I.A.C. on record's face" in Ground One, ECF No. [12] at 5, as a claim of cumulative ineffective assistance of counsel and addresses it as Subclaim Five below.

### i. Subclaim One: Failure to Properly Object to Prosecutorial Misconduct

In Petitioner's Motion for Postconviction Relief, Petitioner argued that his counsel was ineffective for "failing to object during trial when the prosecutor asked irrelevant and prejudicial questions of Defendant Kleckner during cross-examination about whether he believed the State's witnesses, whom had already testified and whose accounts differed from Defendant[']s [and] had a motive to lie against him." ECF No. [15-1] at 244–45. The trial court found Petitioner's claim to be refuted by the record because the State was not improperly asking Petitioner to comment on the credibility of other witnesses. *See* ECF No. [15-4] at 68 ("Taking into consideration the entire cross-examination, it is apparent that the State was attempting to attack the Defendant's credibility by highlighting the numerous inconsistencies including that the Defendant admitted to having lied regarding his accounting of events in his interviews."). The trial court additionally reasoned that "[e]ven if some of the State's questioning was objectionable, there is not a reasonable probability that the outcome of the trial would have been different given the other evidence elicited at trial." *Id.*

Having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim. *See* 28 U.S.C. § 2254(d). Petitioner has failed to demonstrate that any objections by counsel would have been sustained. Because the State's questions were not improper, counsel cannot be deemed deficient for failing to object to those questions. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (finding counsel cannot be deficient for failing to raise a meritless claim). Moreover, given the weight of the evidence against him, Petitioner fails to demonstrate that "the result of the proceeding would have been different" had the objections been made. *Strickland*, 466 U.S. at 694. Accordingly, Subclaim One is denied under the performance and prejudice prongs of *Strickland.* 466 U.S. at 687–88.

**ii. Subclaim Two: Mid-Trial Change of Defense Strategy**

In Petitioner's Motion for Postconviction Relief, he asserted that he planned to call defense witnesses, but "in the middle of trial, defense counsel stated that he had a change in strategy, after the state accused the defense witnesses of violating the rule of sequestration." ECF No. [15-1] at 249. In denying Petitioner's claim, the trial court noted that absent the sequestration issue:

> [E]ven if these witnesses were allowed to testify, there is not a reasonable probability that the outcome of the trial would have been different. First, the witnesses that the Defendant allege should have been called were his mother and sister. Thus, the State would be able to attack the credibility of these witnesses based on bias. During recorded calls while the Defendant was in jail, the Defendant's mother is overheard saying that the detectives are looking for a black phone but she is unwilling to give it to them. (See transcript pages 603-611 attached as part of Ex. 1). Additionally, the Defendant's mother agrees to "play head games" with the detective in order to try and find what evidence they have against him. (See transcript pages 612-614 attached as part of Ex. 1). During the jail call with the Defendant, his mother asked him which Walmart he had purchased the items at. (See transcript pages 623-624 attached as part of the Ex. 1). Later in that conversation, the Defendant's mother states that she is "gonna do some of my own little stuff."

ECF No. [15-4] at 69. There is nothing unreasonable with the trial court's rejection of this claim. *See* 28 U.S.C. § 2254(d). "[C]omplaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and allegations of what a witness would have testified are largely speculative." *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018) (citation omitted). In assessing a claim of ineffective assistance of counsel, "which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that the court will seldom, if ever, second-guess." *Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009).

Due to the credibility issues with the proposed defense witnesses, Petitioner's trial counsel made a valid strategic choice in deciding not to call them. *See id.* Moreover, Petitioner fails to demonstrate that "the result of the proceeding would have been different" had the witnesses

testified. *Strickland*, 466 U.S. at 694. Accordingly, Subclaim Two is denied under the performance and prejudice prongs of *Strickland. Id.* at 687–88.

### iii. Subclaim Three: Failing to Move to Redact Evidence

In Petitioner's Motion for Postconviction Relief, he asserted his counsel was ineffective "for not moving in limine to redact portions of Defendant's statements in a taped interview with detectives which was played for the jury, in which the detectives express their opinion about the veracity of Defendant's story." ECF No. [15-1] at 264. As explained, Petitioner testified at trial and admitted that he lied to law enforcement. As such, the jury was presented with the same evidence through Petitioner's testimony. Moreover, given the weight of the evidence against him, Petitioner fails to demonstrate that the "the result of the proceeding would have been different" had the video been redacted. *Strickland*, 466 U.S. at 694. Accordingly, Subclaim Three is denied under the prejudice prong of *Strickland. Id.* at 687–88.

### iv. Subclaim Four: Failing to Properly Argue Against the Firebomb Charge

Petitioner asserts his "counsel failed to properly move or argue against the firebomb charge." ECF No. [12] at 7. His claim is refuted by the record.

Petitioner's counsel moved for judgment of acquittal on the firebomb charge arguing the State failed to prove the elements. *See* ECF No. [16-1] at 629–41. Counsel explained that per the jury instructions, a firebomb is "a container containing a flammable liquid or combustible liquid or any incendiary chemical mixture or compound, having a wick or similar device capable of being ignited or others means capable of causing ignition." *Id*. at 630:1–5. He argued there had "been no testimony regarding a flammable liquid, combustible liquid, or incendiary chemical mixture or compound." *Id.* at 630:5–7. He therefore asserted "this item, albeit a fire was caused by this item, was not a firebomb. It is a jar with a rag in it." *Id*. at 631:10–12.

Counsel moved for a second motion for judgment of acquittal at the close of the defense case arguing that the wick element was separate from the combustible liquid element. *See id*. at 756–57. The Court concludes that counsel provided professionally competent assistance. *See Strickland*, 466 U.S. at 690. Accordingly, Subclaim Four is denied under the performance prong of *Strickland. Id.* at 687–88.

### v. Subclaim Five: Cumulative Ineffective Assistance of Counsel

As explained, Petitioner fails to establish error and his ineffective assistance claims are denied. Therefore, there is no cumulative error and Subclaim Five is denied.

### D.     Evidentiary Hearing

In a *habeas corpus* proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the pertinent facts of the case are fully developed in the record. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

### E.     Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of *habeas corpus* has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must

demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Jeremy N. Kleckner's Amended Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* by a Person in State Custody, **ECF No. [12]**, is **DISMISSED in part** and **DENIED in part**. Ground One is **DISMISSED** as procedurally defaulted. Ground Two is **DENIED**.

2. A certificate of appealability is **DENIED**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 31, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Case No. 22-cv-14087-BLOOM

Jeremy N. Kleckner
W40378
Graceville Correctional Facility
Inmate Mail/Parcels
5168 Ezell Road
Graceville, FL 32440
PRO SE